

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
05/31/2012

| | | |
|---|---|---|
| IN RE: | § § | |
| FAWN AIRHART, | § § | Case No. 09-34070-H4 |
| Debtor. | § § § | Chapter 7 |

### MEMORANDUM OPINION REGARDING DEBTOR'S MOTION FOR REDEMPTION PURSUANT TO § 722
[Doc. Nos. 237 & 244]

### I. INTRODUCTION

The Court writes this Memorandum Opinion to underscore two points to the consumer bankruptcy bar. First, even though a Chapter 13 plan assigns a value to property that establishes the amount of a secured claim, the Court is not bound by that value once the debtor converts to Chapter 7 and seeks to redeem that property; BAPCPA modified the particular Bankruptcy Code provision on this issue[1]. Second, the consumer bankruptcy bar should not slavishly rely upon the N.A.D.A. Appraisal Guide in attempting to establish the value of a vehicle.

The particular dispute before this Court pits a divorced mother with custody of two minor children against a credit union. The mother, who is the debtor in this case, is trying to hang onto her car—a 2006 Toyota Tundra that she has driven 160,000 miles—because it is her sole means of transportation. She seeks to redeem the Tundra at an amount unacceptable to the credit union. The credit union contends that the debtor should not be allowed to redeem the Tundra because she is unwilling or unable to pay cash equal to either: (1) the value of the Tundra as established

---

[1] In 2005, the Bankruptcy Code was amended. The changes in the Bankruptcy Code are commonly referred to as the BAPCPA amendments because the law is entitled the "Bankruptcy Abuse Prevention and Consumer Protection Act" (BAPCPA).

1

in the debtor's Chapter 13 case, less the amount that the Chapter 13 Trustee paid to the credit union; or (2) the value of the Tundra according to the N.A.D.A. Approval Guide. For the reasons set forth herein, this Court concludes that the debtor will be allowed to redeem the Tundra for the amount of $6,476.50, which is lower than either of the values that the credit union contends must be used.

The Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52, as incorporated into Federal Rule of Bankruptcy Procedure 7052, and Bankruptcy Rule 9014. To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted as such[2].

## II. FINDINGS OF FACT

1. On June 8, 2009, Fawn Airhart (the Debtor) filed a voluntary petition under Chapter 13 of the Bankruptcy Code[3] (the Petition Date). [Doc. No. 1].

2. The Tundra is the Debtor's sole means of transportation. It presently has an approximate mileage of 160,000 miles. [Tape Recording, 4/11/2012 Hearing at 9:52:36 a.m.].

---

[2] The Court made an oral ruling on the issues at bar on April 23, 2012. This Memorandum Opinion now memorializes this ruling to explain how this Court arrived at its decision. To the extent that this Court's oral findings of fact and conclusions of law in any way conflict with this Memorandum Opinion's written findings and conclusions, the latter shall govern. To the extent that the Court's oral findings and conclusions address issues not covered in this Memorandum Opinion, these oral findings and conclusions shall supplement the written findings and conclusions set forth herein.

[3] Any reference hereinafter to "the Code" refers to the United States Bankruptcy Code, and reference to any section (i.e. §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code unless otherwise noted. Further, any reference to "the Bankruptcy Rules" refers to the Federal Rules of Bankruptcy Procedure.

3. The Court confirmed the Debtor's plan [Doc. No. 119], which set forth that the secured claim on the Tundra was $17,000.00. The lienholder on the Tundra is Right Choice Federal Credit Union (Right Choice).

4. The Debtor made plan payments to the Chapter 13 Trustee for several months. Moreover, the Trustee made several distributions to Right Choice during this time period, totaling approximately $4,200.00, thereby reducing Right Choice's secured claim to approximately $12,800.00. [Right Choice's Ex. A].

5. Unfortunately, in July of 2011, the Debtor lost her job and was unemployed for approximately two months. [Testimony of Debtor]. The Debtor's ex-husband also stopped making child support payments during this time[4]. [Testimony of Debtor]. Consequently, the Debtor made *de minimis* payments to the Chapter 13 Trustee in July and August of 2011, and she made no payments in September and October of 2011. [Testimony of Debtor].

6. Eventually, the Debtor filed a Notice of Voluntary Conversion to Chapter 7, and the Debtor's Chapter 13 case was therefore converted to a Chapter 7 case. [Doc. No. 236]. It is in this converted Chapter 7 case that the Debtor now seeks to redeem the Tundra. Her pending motion is styled: "Debtor's Motion for Redemption Pursuant to § 722" (the Motion to Redeem). [Doc. No. 237].

### III. CREDIBILITY OF WITNESSES

The Debtor was the sole witness at the hearing on her Motion to Redeem. The Court finds that her testimony on all issues was credible and gives substantial weight to her testimony.

### IV. CONCLUSIONS OF LAW

---

[4] The Debtor has custody of two minor children from her divorce, and an order from a family law court requires the Debtor's ex-husband to make monthly child support payments.

**A. Jurisdiction, Venue, and Constitutional Authority to Enter a Final Order**

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This particular dispute is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(G) and (O). *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *De Lee de Montaigu v. Ginther (In re The Ginther Trusts)*, Adv. No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that an "[a]dversary [p]roceeding is a core proceeding under 28 U.S.C. § 157(b)(2) even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance"). Additionally, venue is proper in this case pursuant to 28 U.S.C. § 1408.

Having concluded that this Court has jurisdiction over this dispute, this Court nevertheless notes that *Stern v. Marshall*, 131 S. Ct. 2594 (2011) sets forth certain limitations on the constitutional authority of bankruptcy courts to enter final orders. In *Stern*, the debtor filed a counterclaim against a creditor who had filed a proof of claim. *Id.* at 2595. The debtor's counterclaim was based solely on state law; there was no Bankruptcy Code provision undergirding the counterclaim. *Id.* at 2611. Moreover, the resolution of the counterclaim was not necessary to adjudicate the claim of the creditor. *Id.* Under these circumstances, the Supreme Court held that the bankruptcy court lacked constitutional authority to enter a final judgment on the debtor's counterclaim. *Id.* at 2620.

With regard to the Motion to Redeem, this Court concludes that it has the constitutional authority to enter a final order. The Motion to Redeem is based upon an express provision of the Code; namely, § 722. There is no state law involved. Indeed, Texas state law has no equivalent

4

to this statute; it is purely a creature of the Bankruptcy Code. Accordingly, because the resolution of this dispute is based solely on bankruptcy law, not state law, *Stern* is inapplicable, and this Court has the constitutional authority to enter a final order on the Motion to Redeem pursuant to 28 U.S.C. §§ 157(a) and (b)(1).

**B. The Motion to Redeem**

A debtor may redeem personal property, intended to be used for personal, family, or household purposes, from a lien securing a "dischargeable consumer debt." 11 U.S.C. § 722. To redeem the personal property, the debtor must pay the holder of the lien the amount of the "allowed secured claim . . . in full." *Id.* The Code defines an allowed secured claim as:

> An allowed claim of a creditor secured by a lien on property in which the estate has interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or plan affecting such creditor's interest.

11 U.S.C. § 506(a).

1. *If a Debtor who Originally Filed a Chapter 13 Thereafter Converts to a Chapter 7 and Seeks to Redeem Property After the Conversion, the Value of the Property for Redemption Purposes is not Determined by Using the Value of the Property that was Established During the Chapter 13 Case*

Bankruptcy courts must apply 11 U.S.C. § 348(f)(1) to determine the valuation of an allowed secured claim after a debtor has converted her case from Chapter 13 to Chapter 7. BAPCA revised this provision. The current version of § 348(f)(1)(B) states that:

> Valuations of property and of allowed secured claims in the chapter 13 case shall apply only in a case converted under chapter 11 or 12, <u>but not in a case converted to a case under chapter 7</u>, with allowed secured claims in cases under chapters 11 and 12 reduced to the extent that they have been paid in accordance with the chapter 13 plan.

[Emphasis added]. Under the canon of statutory interpretation, "[a] statute is to be construed to give effect to its plain meaning. 'There generally is no need for a court to inquire beyond the plain language of the statute.' Where . . . the language of the statute is clear, the court must enforce it according to its terms." *In re Davis*, 300 B.R. 898, 902 (Bankr. N.D. Ill. 2003) (quoting *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240-241 (1989)).

In the case at bar, contrary to Right Choice's assertion, § 348(f)(1)(B) unambiguously requires that Chapter 13 valuations should only be applied when valuing allowed secured claims in cases converted to Chapters 11 and 12. Section 348(f)(1)(B) explicitly excludes converted Chapter 7 cases from the requirement that allowed secured claims should be valued pursuant to the debtor's Chapter 13 plan. Thus, although the Debtor's Chapter 13 plan establishes the value of Right Choice's secured claim to be $17,000.00 [Finding of Fact No. 3], this Court is not bound by this value now that the Debtor has converted her case to Chapter 7. It necessarily follows that the redemption value of the Tundra is not automatically determined by subtracting the total amount that Right Choice received from the Chapter 13 Trustee (i.e. $4,200) from the Chapter 13 secured claim amount of $17,000.00. Stated differently, $12,800.00 is not automatically the redemption amount.

Right Choice has cited certain cases holding that Chapter 13 plan valuations of allowed secured claims should be applied in converted Chapter 7 cases. *See, e.g.*, *In re Davis*, 300 B.R. at 898 (holding that the Chapter 13 valuation of a secured claim must be applied when a debtor seeks to redeem personal property in a converted Chapter 7 case). However, these cases were decided **prior** to the 2005 amendments to the Code and thus have been statutorily overruled[5].

---

[5] Prior to BAPCPA, § 348(f)(1)(B) read as follows: "Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title . . . valuations of property and of allowed secured claims in the chapter 13 case shall apply in the converted case, with allowed secured claims

6

Accordingly, the Court concludes that § 348(f)(1)(B) bars this Court from automatically using the valuation of the Tundra in the Debtor's Chapter 13 case to determine the value at which the Debtor can redeem the Tundra in her Chapter 7 case. Consequently, this Court must determine the valuation standard to apply to determine the value at which the Debtor can redeem the Tundra.

### 2. *The Value of the Tundra for Redemption Purposes is Determined by the Commercially Reasonable Disposition Approach*

In determining the redemption value of property, a bankruptcy court must use a valuation approach that "balances the competing interests of the debtor and the lienholder." *In re Waters*, 122 B.R. 298, 300 (Bankr. W.D. Tex. 1990). A debtor will be interested in redeeming personal property at the lowest cost. *Id.* On the other hand, a lienholder will be interested in obtaining a high value for the property so that its claim is paid in full or, if not paid in full, at least as much as possible. *Id.*

Bankruptcy courts have used three valuation approaches to determine the value at which a debtor may redeem personal property: (1) the fair market value, which is the net amount at which a creditor would dispose of the collateral as permitted under non-bankruptcy law[6]; (2) the liquidation value, which is the amount of dollars that the personal property would likely generate in an auction or forced sale; and (3) the commercially reasonable disposition approach, which permits courts to look at numerous factors in valuing the personal property. *Waters*, 122 B.R. at

---

reduced to the extent that they have been paid in accordance with the chapter 13 plan." *See Warren v. Peterson*, 298 B.R. 322, 324 (N.D. Ill. 2003). This language clearly required valuations done in a Chapter 13 case to apply to a converted case regardless of whether the case was converted to Chapter 7, Chapter 11, or Chapter 12. BAPCPA, however, added language that expressly sets forth that Chapter 13 valuations no longer apply in converted Chapter 7 cases.

[6] *In re Cruseturner*, 8 B.R. 581, 585 (Bankr. D. Utah 1981); REPORT OF THE COMMISSION OF BANKRUPTCY LAWS OF THE U.S., H.R. DOC. NO. 93-137, 93d Cong., 1st Sess., Pt. 11, at 131 (1973).

301. For instance, bankruptcy courts may evaluate the age and condition of the property and the nature of the lienholder's business to determine the valuation of the property for redemption. *Id.*

Although the fair market value and liquidation value approaches may have several benefits, this Court concludes that the commercially reasonable disposition approach is the most suitable option for balancing the interests of both the Debtor and Right Choice. The commercially reasonable disposition approach allows courts to determine the value of personal property by considering the property itself, and the property's existing physical condition and age. *Id.* This approach also gives courts the flexibility to include in their valuations, "the nature of the creditor's business and the way in which such property is normally disposed of in that business when the collateral is recovered by the creditor." *Id.* Commercially reasonable disposition valuation produces a property value that is the "middle ground between the retail valuation and distressed sale valuation." *Id.* (citing *In re Damron*, 8 B.R. 323, 326 (Bankr. S.D. Ohio 1980)).

In the case at bar, the Debtor has converted her Chapter 13 case to a Chapter 7 case. [Finding of Fact No. 6]. At the hearing on the Motion to Redeem, the only evidence that Right Choice introduced was one page from the N.A.D.A. Appraisal Guide estimating the retail value for the Tundra. [Right Choice's Ex. B]. This exhibit provides the Court with a range of trade-in values for the Tundra, but the N.A.D.A.'s valuation is based on the Tundra having a mileage of 100,000 miles[7]. [Doc. No. 252; Right Choice's Ex. B]. The Tundra, however, actually has

---

[7] The range of N.A.D.A. trade-in values is as follows: (1) the "Clean trade-in" value was $15,500.00; (2) the "Average trade-in" value was $14,250.00; and (3) the "Rough trade-in" value was $12,750.00. The terms "Clean", "Average", and "Rough" are somewhat generic definitions used by the N.A.D.A. Appraisal Guide. For example, the term "Clean" means that the vehicle will need minimal reconditioning to be made ready for resale, whereas the term "Average" means that the vehicle will need a fair degree of reconditioning, and the term "Rough" means that the vehicle will need substantial reconditioning. None of these terms take into account the mileage on the vehicle. N.A.D.A. GLOSSARY, http://www.nada.com/b2b/Support/Glossary.aspx (last visited May 31, 2008).

mileage of approximately 160,000 miles. [Finding of Fact No. 2]. Given this fact, Right Choice's evidence does not accurately estimate the Tundra's trade-in value. *See e.g., In re Jenkins*, 215 B.R. 689, 691 (Bankr. N.D. Tex. 1997) ("In this case, the vehicle has excessive mileage for a vehicle of its age. Because excessive mileage presupposes future repair costs above the norm for a vehicle of that age, the willing buyer would expect a price adjustment."). Consequently, the Court gives very little weight to Right Choice's N.A.D.A. valuation.

The Debtor introduced a Carmax cash appraisal offer for the Tundra. [Debtor's Ex. No. 3]. The Court gives substantial weight to this appraisal because it is based upon a relatively recent inspection of the Tundra by an employee of Carmax, and also discusses the actual mileage and physical condition of the Tundra. Specifically, the Carmax cash appraisal offer notes that: (1) the mileage on the Tundra is 151,116 miles[8]; (2) the Tundra's carpet is stained; (3) both the front doors need repair; (4) the windshield and rear bumper need to be replaced; and (5) the Tundra's front bumper and driver's side quarter panel need paintwork. [Debtor's Ex. No. 3]. Under these circumstances, Carmax appraised the cash value of the Tundra at $5,000.00. [Debtor's Ex. No. 3]. The Court finds this cash value to be a very credible figure.

Further, the Debtor also introduced two Kelley Blue Book valuation reports on the trade-in value of the Tundra[9]. [Debtor's Ex. Nos. 1 & 2]. Each report identifies the trade-in value of the Tundra—whether to a private party or a dealership—based on the vehicle's mileage and

---

[8] The Carmax appraisal was done on February 14, 2012 [Debtor's Ex. No. 3], which was almost two months before the hearing held in this Court. During these two months, the Debtor drove the Tundra, which explains why the mileage figure of 160,000, about which the Debtor testified at the hearing, exceeds the mileage figure of 151,116 set forth in the Carmax appraisal.

[9] This Court distinguishes between the N.A.D.A. Appraisal Guide and the Kelley Blue Book. The Kelley Blue Book, which coined the term Blue Book, is the original source for determining the loan value on used vehicles. The N.A.D.A. Appraisal Guide, founded in 1933, is a separate and distinct source of information on values of used vehicles. MSP PRESS, http://www.msppress.com/nada-blue-book.php (last visited May 23, 2012).

9

current condition. [Debtor's Ex. Nos. 1 & 2]. At the hearing, the Debtor testified that the Tundra is in fair condition. [Tape Recording, 04/11/2012 Hearing at 9:51:11 a.m.]. The Debtor's Exhibit 1 (one of the Kelley Blue Book valuation reports) identifies the private party value of the Tundra, in fair condition, as $7,953.00. The Debtor's Exhibit 2 (the other Kelley Blue Book valuation report) identifies the trade-in value of the Tundra, in fair condition, as $5,448.00.

The Debtor asserts that this Court should value the Tundra based on the average between the Carmax cash appraisal of $5,000 and the Kelley Blue Book private party value of $7,953.00. [Tape Recording, 04/11/2012 Hearing at 9:54:18 a.m.]. The average of the Carmax cash appraisal value and the private party trade-in value is $6,476.50. The Court finds that the average of the cash appraisal value and the private party trade-in value comports with the commercially reasonable disposition standard. *Waters*, 122 B.R. at 301-2. This Court also finds that the $6,476.50 value reasonably balances the interests of both the Debtor and Right Choice because it is less than the N.A.D.A. dealership trade-in value, but more than the Carmax cash appraisal value. Therefore, this Court concludes that the Debtor may redeem the Tundra for $6,476.50.

### V. CONCLUSION

BAPCPA significantly changed valuation of property for cases converted from Chapter 13 to Chapter 7. Under the amended statute (§ 348(f)(1)), once the case is converted, valuation begins anew. Stated differently, the parties have a "second bite at the valuation apple." And, because they do, they must be prepared to introduce evidence on the actual age and condition of the property to be redeemed. With respect to vehicles, while introduction of information from the N.A.D.A. Appraisal Guide—or any similar guide—may be appropriate, any vehicle

lienholder seeking to establish value based upon the N.A.D.A. Appraisal Guide needs to be mindful of the assumptions that it makes.

Here, the Tundra has substantially more mileage than the assumption made by the N.A.D.A. Appraisal Guide. Accordingly, Right Choice's sole reliance on the N.A.D.A. Appraisal Guide at the hearing undercut its position when the Debtor gave credible testimony about the actual mileage of the Tundra and introduced appraisals that are based on this actual mileage. Right Choice—or, for that matter, any vehicle lienholder—would do well to have an agent inspect the vehicle before making a decision as to whether it is worth the time and attorneys' fees to contest the valuation of the collateral in court; and, it would behoove the lienholder to adduce testimony from that agent if the decision is made to go to court. Sole reliance upon the N.A.D.A. Appraisal Guide increases the odds of obtaining a disappointing result.

And, indeed, Right Choice has received such a poor result in the case at bar. The Debtor's plan proposed to pay Right Choice the sum of $17,000.00 [Finding of Fact No. 3], and during the pendency of her Chapter 13 case, Right Choice received approximately $4,200.00. [Finding of Fact No. 4]. Thus, the amount owed to Right Choice on the date of the conversion to Chapter 7 was $12,800.00. [Finding of Fact No. 4]. By relying solely on one page of the N.A.D.A. Appraisal Guide, which assumes that the Tundra has mileage of 100,000, Right Choice ran the risk that this Court would disregard the values set forth on this page and, instead, accept the value asserted by the Debtor based upon her own testimony and appraisals that are based on the actual mileage and the actual condition of the Tundra. And, that is exactly what has happened. Thus, by ruling that the Debtor may redeem the Tundra for $6,476.50, Right Choice is left with a deficiency of $6,323.50 (i.e. $12,800.00 − $6,476.50 = $6,323.50). If Right Choice

had simply done more than robotically rely upon the N.A.D.A. Appraisal Guide, it might have improved its chances of convincing this Court that the redemption value is higher than $6,476.50, thereby reducing the deficiency. Or, if Right Choice had simply inspected the Tundra, it might have concluded that it should attempt to negotiate a settlement with the Debtor and reach an agreement on a redemption value higher than $6,476.50, thereby once again reducing the deficiency.

An Order consistent with this Memorandum Opinion has already been entered on the docket.

Signed on this 31st day of May, 2012.

Jeff Bohm
United States Bankruptcy Judge